fIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERNON MONGTOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-817 (MN) |
| | ) | |
| DOMINIC M. VERECHIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Vernon Montgomery, Smyrna, Delaware – *Pro Se* Plaintiff

December 17, 2020
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Vernon Montgomery ("Plaintiff" or "Montgomery"), an inmate at the James T. Vaughn Correctional Center, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 1). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 8). Plaintiff has filed several motions including two motions to amend (D.I. 11, 14)[1], two motions for injunctive relief (D.I. 5, 12) and a motion for issuance of a subpoena (D.I. 7). This Court proceeds to review and screen the matter pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(a).

## I.    BACKGROUND

On October 2, 2017, a Black male, later identified as Montgomery, walked into a bank in Wilmington, Delaware, carrying a black backpack and wearing glasses, a ski mask, dark pants, a dark hoodie, and a neon construction vest. *See Montgomery v. State*, No. 242, 2019, 2020 WL 1672845, at *1, 227 A.3d 1062 (Del. Apr. 3, 2020) (table). Montgomery approached a bank employee and ordered him to hand over the contents of his cash drawer. *Id*. The bank employee gave Montgomery the cash from his drawer which included a money pack with a Global Positioning System ("GPS") tracking device hidden inside, Montgomery grabbed additional cash from another bank employee's drawer that also included a money pack with a GPS tracking device, and he left the bank. *Id*.

A bank employee reported the robbery to 911 and, relying upon information received from the GPS tracking device, the Wilmington Police Department set up a roadblock. *Id*. Plaintiff's car was stopped at the roadblock, he was removed from the car, and arrested. *Id*.

---

[1]    The Court will grant the first motion to amend filed solely to add compensatory and punitive damages in the prayer for relief. (D.I. 11).

Montgomery was charged with robbery first degree; possession of a firearm during the commission of a felony; wearing a disguise; possession of a firearm by a person prohibited; and possession of ammunition by a person prohibited. *See State v. Montgomery*, 2019 WL 2207667, at *1 (Del. Super. Ct. May 22, 2019), *aff'd*, 227 A.3d 1062 (Del. 2020), *cert. denied*, No. 20-5107, 2020 WL 5883502 (U.S. Oct. 5, 2020). Montgomery filed several motions to suppress and a hearing was held before Defendant Superior Court Judge Eric M. Davis on August 10, 2018. *See State v. Montgomery*, 2018 WL 4214893, at *3 (Del. Super. Ct. Sept. 5, 2018), *appeal dismissed*, 518, 2018, 2018 WL 5291244, 196 A.3d 413 (Del. 2018) (table). Judge Davis ruled from the bench on motions to suppress the arrest and items in the car and on a *Franks* motion. (D.I. 1-2 at 27, 30). Judge Davis held there was reasonable suspicion to pull Montgomery from his car followed by probable cause for the arrest, probable cause for a warrantless search of a book bag, and that there was no *Franks* violation. (*Id*. at 29-30, 37-38). Following the rulings, Plaintiff asked for a transcript of the hearing to prepare his motion for reargument. (*Id*. at 38). On September 5, 2018, Judge Davis entered a written order denying Montgomery's motion to suppress his post-Miranda statement. *See State v. Montgomery*, 2018 WL 4214893.

During the October 29, 2018 final case review, Montgomery advised Judge Davis that he was still waiting for a transcript of the ruling. (D.I. 1-3 at 4). Montgomery again raised the issue of whether probable cause existed for his arrest. (*Id*.). In turn, Judge Davis reiterated that the officers had reasonable, articulable suspicion to pull Montgomery from his car and detain him when, during a road block, the officers walked from car-to-car and noticed that every person except Montgomery asked what was going on, that Montgomery was staring forward with his hands on the steering wheel, and when the officers walked by one officer saw plastic gloves in

Montgomery's car and another officer saw a vest. (*Id*. at 6-7). Judge Davis reiterated there was probable cause to arrest Montgomery when the officers saw the gun and money. (*Id*. at 6).

Plaintiff alleges that on December 10, 2018, he received a transcript of the August 10, 2018 suppression hearing and "immediately noticed words missing" with "at least five things changed or omitted that went in favor of the State." (D.I. 1 at 5). Plaintiff alleges that "in this one place" Defendant stenographer Dominic M. Verechia ("Verechia") "says he found fact of something different?" and that Verechia "made this up, whether it was done in pessima fides [*i.e*., the worst faith or bad faith] or not" it violated Montgomery's due process rights. (D.I. 1 at 6). Plaintiff alleges that it can be "inferred that Verechia knew exactly what he was doing when he changed the words because he didn't sign the transcript declaration that the transcript was an accurate recording of the proceedings."[2] (*Id*.). Plaintiff alleges that if Verechia "would have simply transcribed the truth of what was said, Plaintiff's illegal arrest argument would have prevailed." (*Id*. at 6-7).

On January 17, 2019, Judge Davis entered an order denying Plaintiff's motion seeking production of an audio recording of the suppression hearing, the August 10, 2018 hearing transcript, Judge Davis' *in camera* review of the "FTR gold audio recording", and the entire record of the criminal proceeding.[3] (D.I. 1-10 at 1). Judge Davis found that cause did not exist for the relief sought. (*Id*.). Plaintiff alleges that Judge Davis "ruled that he listened to the audio recording

---

[2]     Plaintiff speculates that Verechia "thought he had to change the facts to help the prosecution," "had a case of noble misconduct," "believed Plaintiff belonged in prison," or "was told to do it be someone in authority." (D.I. 1 at 12).

[3]     Plaintiff alleges that he filed two motions to obtain the audio recordings and both were denied in violation of his right to equal protection and due process under the Fourteenth Amendment. (D.I. 1 at 12-13).

'*in camera*' and the words were 'virtually the same.'"[4]  (D.I. 1 at 5).  "Plaintiff believes this is

simply untrue and believes" that Judge Davis violated his right to due process and equal protection

under the Fourteenth Amendment to the United States Constitution.  (D.I. 1 at 5).  As discussed

by the Delaware Supreme Court,[5] "[a]fter the trial judge listened to the audio recording of the

suppression hearing, he concluded that the transcript and the audio recording were essentially

identical, with only "insignificant, nonsubstantive and irrelevant [discrepancies], mostly relating

to pauses and [the like] made by the [Superior] Court during its ruling."  *Matter of Montgomery*,

2020 WL 1062087, at *1.

Plaintiff alleges that Defendant Deputy Attorney General Timothy G. Maguire

("Maguire") violated his right to due process and equal protection when he:  (1) failed to speak up

about a missing colloquy between Plaintiff and Judge Davis; (2) made objections to Judge Davis'

findings; (3) knowingly elicited false or perjured testimony from testifying officers; (4) knew

witnesses he called were committing perjury or providing false testimony and did not rebuke or

correct the testimony; and (5) made a false claim in the State's response to Defendant's motion to

---

[4]     The Complaint's Exhibit 10, a portion of the criminal case docket, contains the docket
       entry that denied Plaintiff's motion with the notation "please see full order in file."  (D.I. 1-
       10 at 1).  The order was not included as an exhibit.

[5]     This Court takes judicial notice that on March 4, 2020, the Delaware Supreme Court
       dismissed Montgomery's petition for issuance of a writ of mandamus that sought to compel
       the Superior Court to transmit to the Delaware Supreme Court two audio recordings as part
       of the record in Montgomery's direct appeal in *Montgomery v. State*, No. 242, 2019.  *See
       Matter of Montgomery*, No. 516, 2019, 2020 WL 1062087, 226 A.3d 742 (Del. 2020)
       (table).   Therein, the Delaware Supreme Court observed that Montgomery sought
       permission to review the recording of the suppression hearing himself, and it stated that
       the Superior Court correctly noted that the authority to review transcripts for errors lies
       with the Superior Court itself.  *See Id*. at *1 n.5 (citing *Parker v. State*, 205 A.2d 531, 533
       (Del. 1964) ("It is clear to us that [the Court has] no power to conduct hearings of any kind
       to determine the fact as to whether or not this transcript is a correct recording of what took
       place at the trial. . . .")).

exclude testimony.  (D.I. 1 at 7-10, 13).  Plaintiff alleges that Maguire's job is "not merely to get convictions" but to also "insure that justice prevails."  (*Id*. at 7).

Plaintiff alleges that Judge Davis and the Superior Court violated his right to due process and equal protection because during the suppression hearing and trial, their reliance on "extra-affidavit considerations was counter to the purpose of the 'four corners' test."  (*Id*. at 10).  Plaintiff alleges that in doing so, Judge Davis and the Superior Court did not treat him like any other defendant.  (*Id*.).

The Court takes judicial notice that

> [i]n February 2019, a Superior Court jury found Montgomery guilty of first degree robbery, possession of a firearm during the commission of a felony, and wearing a disguise during the commission of a felony.  Immediately following the jury's verdict, Montgomery proceeded to a bench trial on related person-prohibited charges and was found guilty of possession of a firearm by a person prohibited and possession of ammunition by a person prohibited . . . .  On May 24, 2019, the Superior Court sentenced Montgomery to an aggregate of twenty years of Level V incarceration, followed by decreasing levels of supervision.

*Montgomery v. State*, 2020 WL 1672845, at *1.

In the direct appeal of his conviction to the Delaware Supreme Court, Plaintiff argued that his initial detention was illegal; the police did not have probable cause to conduct a warrantless search of his backpack;[6] the Superior Court abused its discretion when it denied his motion to

---

[6]     With regard to the illegal detention claim, the Delaware Supreme Court found that Plaintiff's initial detention did not violate the Fourth Amendment because he was in a car in the area where police knew that the GPS trackers were stopped, he met the general description of the suspect, and he had plastic gloves similar to those used to conceal fingerprints in his immediate vicinity.  It also noted that one officer knew that the bank robber had worn some sort of neon-colored jacket, and he could see a brightly-colored item of clothing located next to Plaintiff.  *Id*. at *4.  With regard to the search of the backpack issue, the Delaware Supreme Court assessed Plaintiff's challenge to the denial of his motion to suppress as amended on the grounds that his detention and the warrantless search of his backpack violated the Fourth Amendment to the United States Constitution and

dismiss for violations of his Sixth Amendment right to a speedy trial; and the Superior Court erred in denying his motion for a new trial based on juror misconduct. *Id.* at *3. The Delaware Supreme Court considered the parties' briefs and record on appeal and, on April 3, 2020, affirmed the judgment of the Superior Court. *Id.* at *7. Plaintiff alleges that the "Delaware Supreme Court rested its entire probable cause finding on false words/changed words by" Verechia and "a false set of facts that [] Verechia omitted and changed." (D.I. 1 at 6, 15).

Plaintiff seeks various forms of injunctive relief including an order directing the Delaware Superior Court to release to Plaintiff the August 10, 2018 audio recording of the suppression hearing and the *in camera* review heard by Judge Davis. (*Id.* at 15-16). He also seeks compensatory and punitive damages. (D.I. 11 at 17).

## II.   **LEGAL STANDARDS**

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d

---

agreed with the Superior Court's decision that reasonable articulable suspicion had blossomed to arrest Montgomery when the officer viewed the fluorescent traffic vest in Plaintiff's constructive possession. *Id.* at *4-5. The Delaware Supreme Court also found that the police had probable cause to search Montgomery's vehicle and, under the automobile exception to the warrant requirement, they were permitted to do so without first obtaining a warrant. *Id*. at *5.

224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim.  *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002).  "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'"  *Dooley v. Wetzel*, 957 F.3d. at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Federal Rule of Civil Procedure 12(b)(6) motions.  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).  Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, however, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted).  In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570).  Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility.  *See Johnson v. City of Shelby*, 574 U.S. 10 (2014).  A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted.  *See id*. at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.   DISCUSSION

### A.   Eleventh Amendment Immunity

The claims against the Superior Court will be dismissed based upon its immunity from suit. Following the reasoning of the Third Circuit in *Benn v. First Judicial Dist. of Pa.*, this Court concludes that the Superior Court of the State of Delaware is a state entity and has Eleventh Amendment immunity.  *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239-40 (3d Cir.

2005) (concluding that Pennsylvania's First Judicial District is a state entity entitled to Eleventh Amendment immunity). The Superior Court will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) § 1915A(b)(2).

### B.      Judicial Immunity

Judge Davis will be dismissed based upon judicial immunity. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id.* (citations omitted). The allegations against Judge David relate to judicial actions taken by him during the course of Montgomery's criminal proceedings. Judge Davis has judicial immunity and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(2).

### C.      Prosecutorial Immunity

Plaintiff alleges that Deputy Attorney General Maguire failed to speak up about a missing colloquy between Plaintiff and Judge Davis; made objections to Judge Davis' findings; knowingly elicited false or perjured testimony from testifying officers; knew witnesses he called were committing perjury or providing false testimony and did not rebuke or correct the testimony; and made a false claim in the State's response to Montgomery's motion to exclude testimony.

A prosecutor enjoys absolute immunity from liability for actions taken in connection with judicial proceedings. *See Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008) (citations omitted), *aff'd sub. nom.*, *Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011). This generally means activities conducted in court, such as presenting evidence or legal arguments. *Giuffre v. Bissell*, 31 F.3d

1241, 1251 (3d Cir. 1994) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Moreover, prosecutors should not be encumbered by the threat of civil liability while performing judicial or quasi-judicial functions.  *See Odd v. Malone*, 538 F.3d at 208.  Prosecutors acting within the scope of their duties in initiating and pursuing a criminal prosecution are immune to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976).

All of the allegations directed to Maguire relate to acts taken by him while he represented the State of Delaware in prosecuting Montgomery.  Many speak to witness testimony alleged to be false or perjured.  Courts have routinely held, however, that a prosecutor's solicitation and presentation of testimony to a judge or jury – even perjured testimony – is a quintessential advocatory act protected by absolute immunity.  *See, e.g.*, *Burns v. Reed*, 500 U.S. 478, 485 (1991) (prosecutorial immunity applies to a prosecutor's "knowing use of false testimony before the grand jury and at trial"); *Rose v. Bartle*, 871 F.2d 331, 344 (3d Cir. 1989) (solicitation of false testimony for presentation to the grand jury fell within "the preparation necessary to present a case" and therefore enjoyed absolute immunity); *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (prosecutors are immune from claims arising from their conduct in initiating a prosecution, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings") (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992)).  Because each of the improper acts attributed to Maguire occurred while he was serving as an advocate during a judicial proceeding, he is entitled to absolute immunity from the claims raised against him. Therefore, Maguire will be dismissed as a defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(2).

### D.      Court Reporter

Plaintiff alleges that Verechia did not correctly transcribe the August 10, 2018 suppression hearing and that words missing or omitted "went in favor of the State."  Plaintiff alleges that because Verechia did not sign the transcript declaration, it can be "inferred that Verechia knew exactly what he was doing when he changed the words."  He further alleges that if Verechia "would have simply transcribed the truth of what was said, Plaintiff's illegal arrest argument would have prevailed."  (D.I. 1 at 6-7).

Although court reporters are not entitled to absolute judicial immunity simply by virtue of their position, *Antoine v. Byers & Anderson, Inc*., 508 U.S. 429 (1993), quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters, who are acting in their official capacities.  *Martin v. Kline*, 105 F. App'x 367 (3d Cir. 2004); *see also Shahin v. Darling*, 606 F. Supp. 2d 525, 543 (D. Del. 2009), *aff'd*, 350 F. App'x 605 (3d Cir. 2009). Whether immunity applies in a civil rights claim based on an inaccurate transcript, rests upon allegations that the error had a material adverse effect on his criminal proceedings.

A defendant does not have a constitutionally protected right to a totally accurate transcript of his criminal proceedings.  *Robinson v. Smyth*, 258 F. App'x 469, 471 (3d Cir. 2007) (citing *Tedford v. Hepting*, 990 F.2d 745, 747 (3d Cir. 1993); *Carpenter v. Vaughn*, 296 F.3d 138, 155 (3d Cir. 2002).  "[A] constitutional violation would occur only if the inaccuracies in the transcript adversely affected appellate review in the state courts.  The threshold question, therefore, is . . . whether plaintiff has alleged deficiencies in the trial transcript substantial enough to call into question the validity of the appellate process in the state courts."  *Carpenter*, *supra*, at 155 (quoting *Tedford*, *supra*, at 747); *Robinson*, 258 F. App'x at 471.

This claim fails for several reasons. First, both the Superior Court and the Delaware Supreme Court considered Plaintiff's argument that the suppression hearing transcript contained errors. The Superior Court listened to the audio recording of the suppression hearing and compared it to the transcript and found they were essentially identical and denied Plaintiff's motion for the Superior Court to provide him with the audio recording of the proceedings. When Plaintiff tried to obtain the audio recording with a petition for writ of mandamus, the Delaware Supreme Court noted that the authority to review transcripts for errors lies with the Superior Court and found that Plaintiff could not show that the Superior Court arbitrarily failed or refused to perform its duty.

Plaintiff couches his claims as violations of his constitutional rights pursuant to § 1983 but it is evident that he actually seeks review and rejection of Delaware state decisions. Federal district courts are courts of original jurisdiction and have no authority to review final judgments of a state court in judicial proceedings.[7] *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *see Power v. Department of Labor,* Civ. No. 02-169-GMS, 2002 WL 976001 (D. Del. May 3, 2002). The issue of whether the suppression hearing transcript contained errors was resolved by both the Superior Court and Delaware Supreme Court. In essence, Plaintiff seeks to overturn those rulings. The *Rooker-Feldman* doctrine applies as this is a case "brought by [a] state-court loser [ ] complaining of injuries caused by the state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). Allowing Plaintiff to proceed on this

---

[7]     The *Rooker-Feldman* doctrine refers to principles set forth by the Supreme Court in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). Because the doctrine divests the court of subject matter jurisdiction, it may be raised at any time by the court *sua sponte. Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411, 419 (3d Cir. 2003); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003).

claim would allow him to use the federal courts to appeal state court judgments and, thus, would run afoul of the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). The claim falls under the purview of the *Rooker-Feldman* doctrine and, therefore, this Court cannot exercise jurisdiction over this claim.

Second, and despite Plaintiff's allegations to the contrary, Plaintiff does not have a right to an error free transcript. And, it is clear from a review of the Complaint, exhibits and reported decisions that the alleged transcription errors do not call into question the validity of Plaintiff's appellate review. The issue of transcript errors is subsumed in Plaintiff's claim that his initial detention was illegal and that he was then arrested without probable cause. Both the Superior Court and the Delaware Supreme Court considered the claim and rejected it. Indeed, all of Plaintiff's claims were rejected on direct appeal.

Finally, several courts have concluded that civil rights claims against court reporters for transcription errors, even when the errors are alleged to have had a material adverse effect on criminal proceedings, may be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Murphy v. Bloom*, 443 F. App'x 668, 669 (3d Cir. 2011) (allegation in civil rights action that prosecutor altered inmate's trial transcript was *Heck*-barred because it implied the invalidity of his conviction); *Tedford*, 990 F.2d at 749-50 (due process claim for damages against court reporters for allegedly tampering with transcript was not cognizable in a section 1983 action "absent a successful challenge to the underlying conviction"). Considering *Heck* and summarizing the interplay between habeas and § 1983 claims, the Supreme Court explains that, "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or

13

internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration."

Here, the validity of Plaintiff's criminal conviction is necessarily at issue. Plaintiff seeks injunctive relief and compensatory damages. This relief could be justified only on the basis of a finding that, because of the alleged suppression hearing transcript errors, the conviction was unconstitutionally obtained. Notably, in the prayer for relief Plaintiff states, "had the audio record been granted at that time it would have been proven false . . . . There is no amount of money that can pay for time spent in prison. I find it crazy to believe a court faced with this type of error or injustice would not grant release." Thus, Montgomery is asking for compensatory damages. (D.I. 11 at 17). Without belaboring the point, the transcription error claim is a collateral attack upon the validity of Plaintiff's conviction and sentence.

For all of the above reasons, the claim against Verechia will be dismissed. This Court finds futility of amendment as to the claim.

## IV.   **MOTION TO AMEND**

Plaintiff filed a motion to amend to add as defendants Corporals Johnny Whitehead and Kecia Rosado, both of whom testified as witnesses in his criminal trial. (D.I. 14). Pursuant to Fed. R. Civ. P. 15(a)(2), courts "should freely give leave [to amend] when justice so requires." "[U]ndue delay, bad faith, dilatory motive, prejudice, [or] futility" could all "justify a denial of leave to amend." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" under the standard of Federal Rule of Civil Procedure 12(b)(6). *Lejon-Twin El v. Marino*, 722 F. App'x 262, 265 (3d Cir. 2018) (quoting *Shane*, 213 F.3d at 115).

In evaluating whether a plaintiff has stated a claim upon which relief could be granted, the court accepts "all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and determines whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Bronowicz v. Allegheny Cty.*, 804 F.3d 338, 344 (3d Cir. 2015) (internal quotation mark omitted). Here, Plaintiff attempts to raise a § 1983 claim against two witnesses whom he alleges committed perjury while testifying. Witnesses, however, are immune from § 1983 liability when the claim is based on allegations of perjury, either at trial or during pretrial proceedings. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) ("[A] trial witness has absolute immunity [from suit under § 1983] with respect to any claim based on the witness' testimony."); *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992) (witness immunity applies to testimony given at pretrial hearings as well as to trial testimony); (*Benckini v. Upper Saucon Twp*., C.A. No. 07-3580, 2008 WL 2050825, at *11 (E.D. Pa. May 13, 2008) (absolute immunity afforded to witnesses, including police officers, charged under § 1983 for alleged perjurious testimony at pretrial proceedings).

The proposed defendants are immune from suit. Because there is futility in amendment, the motion to amend will be denied. (D.I. 14).

## V.     OTHER MOTIONS

The Complaint will be dismissed and amendment is futile. Therefore, this Court will deny as moot Plaintiff's motions for injunctive relief (D.I. 5, 12) and Plaintiff's motion for a subpoena to preserve evidence (D.I. 7).

## VI.    CONCLUSION

For the above reasons, this Court will dismiss the Complaint (1) pursuant 28 U.S.C. § 1915(e)(2)(B)(i) and (iii) and § 1915A(b)(1) and (2) for want of jurisdiction as to the claim

against Verechia.   The Court will grant Plaintiff's first motion to amend (D.I. 11) and deny Plaintiff's second motion to amend as futile (D.I.14) and deny as moot Plaintiff's motions for injunctive relief (D.I. 5, 12) and for issuance of a subpoena (D.I. 7).  This Court finds amendment is futile.

An appropriate Order will be entered.